UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION


| | | |
|---|---|---|
| **DAVID A. NELSON** | : | **DOCKET NO. 16-cv-745** |
| **D.O.C. # 595951** | | |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **KEITH COOLEY** | : | **MAGISTRATE JUDGE KAY** |

REPORT AND RECOMMENDATION

Before the court is a pro se petition for writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by David A. Nelson ("petitioner"). The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at Allen Correctional Center in Kinder, Louisiana. Keith Cooley, warden, opposes the application. Doc. 8.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

I.
BACKGROUND

*A. Conviction*

The petitioner was indicted on a charge of second degree murder on December 17, 2009, in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. Doc. 8, att. 3, pp. 38–39.

The charge related to the killing of Chad Heath. *Id.* at 38. The following factual summary was later provided by the Louisiana Third Circuit Court of Appeal:

> On March 28, 2009, Defendant exited the Plantation Club in Sulphur, Louisiana, and hit Chad Heath, who was standing in the parking lot, with his fist. Consequently, Heath fell backward onto the pavement. As a result of the fall, Heath suffered a fracture to the base of his skull. Heath died as a result of his injuries on April 1, 2009.

*State v. Nelson*, 2013 WL 5539336, *1 (W.D. La. Oct. 9, 2013). Following a jury trial which began on March 20, 2012, the petitioner was convicted of the responsive offense of manslaughter by a verdict of 10–2. Doc. 8, att. 3, pp. 29–36 (trial minutes). He was then sentenced to a term of thirty years' imprisonment without benefit of probation, parole, or suspension of sentence. Doc. 8, att. 5, pp. 234–37. The defense filed a motion to reconsider sentence but it was denied without hearing. Doc. 8, att. 3, pp. 173–74, 175.

### B. Direct Appeal

The petitioner asserted three assignments of error on appeal to the Third Circuit:

1. The trial court erred in failing to instruct the jury on self-defense and defense of others.
2. The evidence adduced at trial was insufficient to disprove his claims of self-defense and defense of others.
3. The sentence was excessive.

*State v. Nelson*, 2013 WL 5539336 at *1. The court declined to consider the first two assignments of error, noting that the defense had neither raised those theories at trial nor requested such instruction from the trial court. *Id.* at *1–*3. It reviewed the third assignment on the merits and found that the sentence did not reflect an abuse of discretion by the trial court. *Id.* at *3–*6. Accordingly, the Third Circuit affirmed the petitioner's conviction and sentence. *Id.* at *6. The petitioner sought review with the Louisiana Supreme Court, which denied same on April 17, 2014.

*State v. Nelson*, 138 So.3d 626 (La. 2014). He did not seek review from the United States Supreme Court. Doc. 1, p. 2.

### C. State Collateral Review

The petitioner filed a *pro se* application for post-conviction relief in the trial court on or about January 21, 2015.[1] Doc. 8, att. 11, pp. 50–65. There he raised the following claims, along with a request for an evidentiary hearing and appointment of counsel:

1. He was denied his right to an impartial jury because the jury foreperson worked at a law firm that was representing the victim's family in a wrongful death suit.
2. He received ineffective assistance of counsel due to his attorney's failure to challenge or strike that juror during voir dire.
3. He received ineffective assistance based on his attorney's failure to argue self-defense or defense of others as justification for the killing.
4. He received ineffective assistance of appellate counsel due to that attorney's decision to raise two claims that were not preserved for appellate review.

*Id.* at 54–57, 62–63. The trial court denied the application without a hearing. *Id.* at 66. The petitioner sought review in the Third Circuit, which denied same. *Id.* at 68. He then filed a writ application in the Louisiana Supreme Court, which issued a denial on March 24, 2016. *State ex rel. Nelson v. State*, 187 So.3d 995 (La. 2016).

### D. Federal Habeas Petition

The instant petition was filed on May 5, 2016. Doc. 1, p. 14. Here the petitioner raises the following claims:

1. He was denied his right to an impartial jury due to the bias of the jury foreperson.

---

[1] The petitioner signed the application on December 31, 2014, and it was stamped as received in the trial court on January 21, 2014. Under the prison mailbox rule, a *pro se* prisoner's pleading is deemed filed on the date it is submitted to prison authorities to be mailed. *See Stoot v. Cain*, 570 F.3d 669, 671–72 (5th Cir. 2009) (extending this rule to Louisiana state court filings, for purposes of calculating timeliness of a federal habeas petition). Here there is no indication of when the petitioner actually mailed the application, however. Finding that it would make no difference to the petition's timeliness, *infra*, we thus use the date it was received by the trial court as the effective date of filing.

  2. He received ineffective assistance of counsel when his trial attorney failed to challenge or strike that juror during voir dire.
  3. He received ineffective assistance of counsel due to his trial attorney's failure to argue self-defense or defense of others as justification for the killing.
  4. The trial court violated his Eighth Amendment protection against cruel and unusual punishment by imposing an excessive sentence.

*Id.* at 5–10.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

*A. Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were

pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. *Exhaustion and Procedural Default*

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

#### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[2] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for

---

[2] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

-6-

traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient

for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975 (2006).

### III.
#### LEGAL ANALYSIS

*A. Timeliness*

Here the Louisiana Supreme Court denied review of the petitioner's direct appeal on April 17, 2014. The petitioner's conviction and sentence thus became final on July 17, 2014, when his time for seeking review in the United States Supreme Court expired. *See* Sup. Ct. R. 13. Thus **188 days** accrued before he filed his application for post-conviction relief in the trial court on January 21, 2015. The statute of limitations under § 2244(d) was tolled until the Louisiana Supreme Court denied his writ application on March 24, 2016. Accordingly, another **42 days** accrued before the instant petition was filed on May 5, 2016, rendering it timely with only **230 days** counted against the one-year limit.

*B. Exhaustion and Procedural Default*

The first three claims raised in this petition were exhausted in the state courts and none was subject to a procedural bar there. Accordingly, they are properly before this court and may be reviewed on the merits.

The respondent contends that the fourth claim, alleging a constitutionally excessive sentence, was never "fairly presented" to the state courts as it was argued and considered there on

state law grounds. We disagree. Although the Third Circuit's opinion was based on state law grounds and a comparison with other state cases, it is still phrased as a claim that the sentence is "unconstitutionally excessive." *Nelson*, 2013 WL 5539336 at *3. The defendant's brief on appeal also shows that, through counsel, he argued that the sentence was excessive under both state law and the United States Constitution. *See* doc. 8, att. 12, pp. 55–62. Accordingly, the claim of unconstitutional excessiveness was fairly presented and that claim is thus exhausted. As no procedural bar was applied, it is not subject to procedural default.

### C. Substantive Analysis

Having determined that all claims are properly before this court, we now review them on the merits under the standards outlined above.

#### 1. Impartial jury

The petitioner first claims that he was denied his constitutional right to an impartial jury when the trial court allowed Elizabeth Thibodeaux to serve as juror and jury foreperson.

The Sixth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees criminal defendants the right to trial by an impartial jury. U.S. CONST. amend. VI; *Morgan v. Illinois*, 112 S.Ct. 2222, 2228 (1992) (citing *Duncan v. Louisiana*, 88 S.Ct. 1444 (1968)). Thus, a criminal defendant "is entitled to a jury capable and willing to decide the case solely on the evidence before it." *Chavez v. Cockrell*, 310 F.3d 805, 811 (5th Cir. 2002) (quoting *Smith v. Phillips*, 102 S.Ct. 940, 946 (1982)).

Bias of a prospective juror may be actual, through express admission, or implied, through proof of specific facts showing that it must be presumed as a matter of law. *Brooks v. Dretke*, 444 F.3d 328, 329–30 n. 5 (5th Cir. 2006); *see also Untied States v. Nell*, 526 F.2d 1223, 1229–30 (5th Cir. 1976). However, the Supreme Court does not look favorably on attempts to impute bias to

jurors.[3] *Solis v. Cockrell*, 342 F.3d 392, 396 (5th Cir. 2003). Furthermore, although constitutional standards of fairness mandate "a panel of impartial, indifferent jurors," "[q]ualified jurors need not . . . be totally ignorant of the facts and issues involved." *Soria v. Johnson*, 207 F.3d 232, 239 (5th Cir. 2000) (quoting *Murphy v. Florida*, 95 S.Ct. 2031, 2036 (1975)). The court will not "readily presume" that a juror is biased just because he has been exposed to information about the defendant outside of the courtroom. *Willie v. Maggio*, 737 F.2d 1372, 1379 (5th Cir. 1984). Instead, a juror is only presumed to be biased if he has been made aware of "such inherently prejudicial facts about the defendant that the court deems it highly unlikely that the juror can exercise independent judgment," even if the juror declares otherwise. *Id.*

In this matter, jury foreperson Elizabeth Thibodeaux stated during voir dire that she was a paralegal at a local law firm and had worked there for over twenty years. Doc. 8, att. 7, p. 211. Her assignment was to four attorneys in the toxic torts unit. *Id.* at 211–12. She was familiar with a different attorney who was representing the victim's family in a civil suit and had "just [been] moved into [his] area." *Id.* at 212. However, she stated that she "[didn't] know anything about his case load" and did not know that he was representing the victim's family. *Id.* She also stated that she had seen reports of the criminal case on the news. *Id.* at 212–13. However, she averred that she could put all outside information from her mind and make decisions as a juror based only on what was presented in court. *Id.* at 213.

The petitioner fails to point to any other indications of bias on the part of Thibodeaux, other than his own conjecture that she might be "compelled by loyalty" to her employer to prejudge him or might be exposed to "inter-office chatter" about the case. Doc. 1, att. 1, pp. 12, 14. Thibodeaux

---

[3] As Justice O'Connor noted in her concurrence in *Smith*, there are certain "extreme situations" in which the court might find a juror biased as a matter of law. 102 S.Ct. at 948. By way of example, she offered scenarios where the juror is an employee of the prosecuting agency, a close relative of a participant in the trial, or a witness or otherwise involved in the criminal transaction. *Id.*

professed that she was unaware of the suit, that she did not work for the attorney who had filed it, and that her only awareness of the case came from media reports.[4] She also maintained that she could act impartially and limit her judgment to the evidence presented at trial. In light of her testimony and the tenuous nature of her connection to the victim's family's suit, there is not sufficient information to impute bias to this juror. The petitioner's allegations fail to show that Thibodeaux's presence violated his right to an impartial jury. Accordingly, he demonstrates no error in the state court's ruling and no right to federal habeas relief under this claim.

### 2. *Ineffective assistance – voir dire*

The petitioner next claims that he received ineffective assistance at trial because no challenge for cause or peremptory challenge was raised against Thibodeaux.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. 104 S.Ct. at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential 'distorting effect of hindsight.'" *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting

---

[4] The respondent also shows that this suit was filed against the nightclub where the killing occurred. Doc. 8, att. 2. However, this fact was not elicited at voir dire or contained in the state court record, and thus has no bearing to the state courts' determination of Thibodeaux's potential bias.

-11-

*Strickland*, 104 S.Ct. at 1065). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

Under Louisiana law, a prospective juror may be challenged for cause on any of the following grounds:

> (1) The juror lacks a qualification required by law;
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
> (3) The relationship . . . is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
> (4) The juror will not accept the law as given to him by the court;
> (5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

LA. C. CR. P. art. 797. Thibodeaux averred that she could render an impartial verdict based on the law and evidence. Despite the petitioner's contentions, it does not appear that her employment gave her a sufficient relationship with the victim to call her judgment into question under Article 797(3). Accordingly, he cannot show deficient performance in this respect as he has not shown a

basis for mounting a successful challenge for cause. *E.g.*, *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection does not cause counsel's performance to fall below an objective standard of reasonableness).

As to whether counsel rendered ineffective assistance in failing to use a peremptory strike against the juror, the record does not contain any testimony from counsel on their jury selection strategy.[5] However, the first step in conducting a deficient performance analysis for failure to strike an allegedly biased juror is to determine whether the juror was actually biased. *Virgil v. Dretke*, 446 F.3d 598, 608–10 (5th Cir. 2006). Here, for the reasons provided under the previous claim, the petitioner fails to make such a showing. Due to his inability to demonstrate bias, he cannot demonstrate deficient performance under this claim, let alone prejudice based on the fact that Thibodeaux was selected to serve. Thus he shows no error in the state court's ruling and no right to federal habeas relief.

### 3. Ineffective assistance – self-defense and defense of others

The petitioner next argues that trial counsel rendered deficient performance by failing to argue that the killing of Heath was committed in either self-defense or defense of others.

As the respondent notes, a defendant's "desire to have a specific defense theory presented does not amount to ineffective assistance on federal habeas review." *Coble v. Quarterman*, 496 F.3d 430, 437 (5th Cir. 2007). In this matter the defense built its case instead around an argument of complete innocence, maintaining that the petitioner had not been the one to strike Heath. *E.g.*, doc. 8, att. 10, pp. 33–34 (closing argument). As the petitioner himself notes, the police report shows that he told Calcasieu Parish Sheriff's Officer R. Curtis at their first encounter that he had

---

[5] At trial the petitioner was represented by Charles St. Dizier and Michael McHale, both of whom were present during voir dire. *See* doc. 8, att. 7, p. 5. The transcript reveals that the defense used all of its peremptory strikes during jury selection. Doc. 8, att. 9, pp. 123–24. Therefore the decision to strike any of those other prospective jurors rather than Thibodeaux was likely a matter of strategy, and therefore entitled to deference under *Strickland*.

been attacked in the parking lot of the Plantation Club while trying to defuse a fight after his cousin was kicked out for touching one of the dancers. Doc. 8, att. 3, p. 106. He denied ever punching or striking anyone.[6] *Id.* At sentencing the petitioner continued to insist that he did not strike the fatal blow, stating:

> I hope one day that the Heath family can forgive me for that tragic night their son's life was taken from them, even though I maintain my innocence and I know that I am not the one who hit Chad that night. If it would not have been for my cousin's actions inside that club, it would not have led to a fight outside where Chad Heath's life was tragically taken that night.

Doc. 8, att. 5, p. 218. Indeed, in his briefing before this court, the petitioner still does not admit that he struck any blows against Heath. *See* doc. 1, att. 1, pp. 6–7.

To mount a defense that the blow had been struck by the petitioner, but in defense of others or in self-defense, would be inconsistent with the defense that was advanced and with the account that the petitioner continues to offer to this day. The petitioner does not show why self-defense or defense of others might have been more persuasive than the arguments advanced at trial.[7] Additionally, to the extent that the petitioner continues to maintain his own innocence as a matter of fact, he must bear some responsibility for his story's lack of success before the jury rather than blaming his attorneys for being unable to talk him into a different version of events. Accordingly,

---

[6] The petitioner also submitted to a polygraph examination with his then-retained counsel. Doc. 8, att. 3, pp. 73–74. Although he indicated there that he had hit back after being attacked, he maintained that he did not hit Heath and passed the examination based on that account. *Id.*

[7] The petitioner contends that trial counsel should have been aware of the advisability of these defenses based on the state's notice that it would introduce the petitioner's statements taken by Calcasieu Parish Sheriff's Officer R. Curtis on March 29, 2009. Doc. 8, att. 3, pp. 198–200. The petitioner states that he began crying in that interview and told Officer Curtis that he had been in a fight at the Plantation Club and was defending himself and his cousin against at least six bouncers. Doc. 1, att. 1, p. 17. The narrative summary provided by Officer Curtis instead shows the following account from the petitioner:
> He stated [that] he approached the subjects and attempted to defuse the situation when he was struck from behind and fell to the ground. He stated the subjects attacked [his cousin and him], and that at no time did he punch or strike anyone.

Doc. 8, att. 3, p. 106. Accordingly, the petitioner's statements appear to match with his account of never striking a single blow against the victim. They do not show that counsel acted unwisely in not altering the theory of the defense.

he cannot satisfy either of *Strickland*'s prongs under this argument. Thus he fails to show any error to the state court's ruling and any right to federal habeas relief.

### 4. *Excessive sentence*

Finally, the petitioner argues that the trial court imposed an excessive sentence under the circumstances of the case.

In addition to protecting against barbaric punishments, the Eighth Amendment also bars sentences for terms of years that are "grossly disproportionate" to the crime committed. *Ewing v. California*, 123 S.Ct. 1179, 1185–87 (2003). However, the Court also recognizes that sentence terms for felonies are "purely a matter of legislative prerogative." *Harmelin v. Michigan*, 111 S.Ct. 2680, 2684 (1991) (quoting *Rummel v. Estelle*, 100 S.Ct. 1133, 1139 (1980)). Therefore a state sentence within statutory limits will not be found unconstitutional on habeas review unless it is so disproportionate to the crime "as to be completely arbitrary and shocking." *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975).

In analyzing excessive sentence claims, courts in the Fifth Circuit first weigh the gravity of the offense against the severity of the sentence. *McGruder v. Puckett*, 954 F.2d 313, 315–16 (5th Cir. 1992). Then, **if** the court determines that gross disproportionality exists, it proceeds to a comparison of similar crimes in the same jurisdiction and sentences for the same crime in other jurisdictions. *Id.* at 316; *United States v. Gonzales*, 121 F.3d 928, 942–43 (5th Cir. 1997). If the court does not discern any gross disproportionality, then the inquiry is finished at the first step. *Gonzales*, 121 F.3d at 942–43.

Here petitioner was convicted of manslaughter. That offense carries a maximum sentence of forty years at hard labor under Louisiana law. LA. REV. STAT. § 14:31(B). The petitioner was sentenced to a term of thirty years. Doc. 8, att. 3, p. 37. The sentencing court first noted that the

petitioner was not eligible for a probated sentence as he had already been on probation for another offense in Florida when he committed the instant crime.[8] Doc. 8, att. 5, p. 234. It went on to remark that the prior offense indicated

> that [the petitioner] has a problem dealing with situations where he feels like he has got to win or he has got to hit or he has got to lash out or do something. I have got nothing which contradicts me to believe that he was convicted of the crime. . . .
>
> [A]nd his probation was revoked in connection with that because of this event, because of the event that we have here. So, I believe that there is a serious risk that this gentleman, if he is walking the street, will get into a situation where he thinks he can knock somebody down and get out of it. I certainly believe any lesser sentence than what I am about to impose would deprecate the seriousness of his crime; and I take into consideration the fact that the victim in this case did nothing to encourage or to cause anybody to want to hit him.

*Id.* at 235. The court reviewed aggravating and mitigating circumstances, noting in particular that the victim had not been an instigator of the fight and that the petitioner had a history of prior delinquent acts. *Id.* at 236. It then imposed sentence, remarking it had reduced the term by five years due to how well-spoken the petitioner's letter had been but that it remained bothered by the petitioner's refusal to accept any responsibility for the victim's death. *Id.* at 236–38.

Under the record evidence above, the petitioner cannot show that the sentence imposed was grossly disproportionate to the offense, in spite of his argument that he is entitled to a reduced sentence based on the lack of a firearm, the involvement of other individuals in the fight, or the fact that the death resulted from a single blow. He received a term ten years under the maximum authorized under law, in spite of his own criminal history and refusal to accept responsibility, after being found guilty of striking an unprovoked blow that caused the death of another young man. We need not compare this sentence to others in order to find that it does not rise to the extraordinary

---

[8] The court did not have the details of this offense but noted that it seemed "to be pretty serious if he was ordered to make restitution for $4100." Doc. 8, att. 5, pp. 234–35.

level required to violate the Eighth Amendment. Accordingly, the petitioner shows no error to the state court's ruling and no right to federal habeas relief.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2).

THUS DONE this 9th day of August, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE